MEDERIC W. CHARPENTIER AND JUSTINE CHARPENTIER
v. TIMOTHY BRESNAHAN.

*Replevin—Seizure of property not described in writ—Lien of defend-
ant—Judgment.*

Where a writ of replevin contained a specific description of a por-
tion of a stock of goods seized by a sheriff under executions
against the plaintiff, but the coroner replevied the entire stock,
which he delivered to the plaintiff, after appraisal, upon receiv-
ing the statutory bond, the defendant is not limited in his
recovery to the value of the goods described in the writ.

Error to Muskegon. (Russell, J.) Argued January 30,
1889. Decided February 8, 1889.

Replevin. Defendant brings error. Reversed. The facts
are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*F. W. Cook,* for plaintiffs.

LONG, J. This is an action of replevin brought in
Muskegon circuit court. Plaintiffs are husband and wife.
The defendant is sheriff of Muskegon county.

Mederic W. Charpentier was engaged in the retail
grocery business, on Pine street, in the city of Muskegon,
carrying a stock of groceries, amounting in value to some
$700 or $800. He became indebted to Hawkins & Perry,
a firm doing business in Grand Rapids, for goods bought.
of them, as well as to several other creditors. These
claims were put into judgments, and executions were
issued and placed in the hands of William McLaughlin,
under-sheriff, who, acting under the directions of the
attorneys of Hawkins & Perry, seized all the goods and
fixtures in the store of Charpentier. Five other execu-

tions were in the hands of this officer at the time of the
levy, as well as the one in favor of Hawkins & Perry.
These executions were levied on January 5, 1885, and
amounted to about $650. The under-sheriff seized all
the goods in the store, and Mr. Hawkins, of the firm of
Hawkins & Perry, obtained from Mr. Charpentier, the
execution debtor, a paper at the time of the levy of the
executions, which reads as follows:

"MUSKEGON, MICHIGAN, Jan. 5, 1885.

"For value received, I hereby waive, release, and relin-
quish to Lewis E. Hawkins and George R. Perry, plaint-
iffs named in the execution this day levied on my stock
of goods, wares, and merchandise, store fixtures, etc., in
the city of Muskegon, by the under-sheriff of Muskegon
county, Michigan, all exemptions and rights to exemp-
tion which I have or may be entitled to in and to said
stock, under the laws of the State of Michigan.

"M. W. CHARPENTIER."

The seizure of the goods, and the obtaining of this
paper, took place between 4 and 5 o'clock in the after-
noon of January 5, 1885. This action of replevin was
brought on January 13, 1885, the affidavit and writ
describing the property specifically. This writ was placed
in the hands of the coroner of the county, who seized
not only the goods described in the affidavit and writ,
amounting in value to $313 as afterwards found by the jury,
but also took from the sheriff the entire stock, which he
held under the execution levies, caused it to be appraised,
and delivered all the property over to the plaintiffs in
the writ. The sheriff, by reason, as it is claimed, of
having the paper waiving the exemptions, caused no
appraisement of the property to be made, nor did he set
out any exemptions to the execution debtor. The action
of replevin was brought, as claimed, for the purpose of
getting possession of the property exempt from levy on
execution, the plaintiff in the writ claiming the $250

exempt as stock in trade, as well as other exemptions, by way of provisions for his family for six months. On the trial the jury found that the defendant did not unlawfully detain the goods, and that he had a lien upon and special property in the goods to the amount of $63. The jury also found the value of the goods to be $313, and that plaintiffs were the general owners. Judgment was rendered in favor of defendant for the amount of $63. Defendant brings error. Five errors are assigned:

1. That the court erred in refusing to give defendant's written request to charge as follows: "If you find that the plaintiff M. W. Charpentier knew that the paper which he signed was a waiver of his exemptions, your verdict must be in favor of the defendant."

2. That the court erred in instructing the jury: "But if, on the other hand, he signed this paper, believing it to be a receipt, as he says, for the goods he was then to take for his family use, or did not fully understand that it was a waiver of his exemption right, such paper would not amount to a waiver, and you are to determine this question from all of the evidence put into the case."

3. The court erred in instructing the jury: "In considering the question of the value of the property involved in this suit, you are not to consider any property not described in the writ and declaration, no matter whether it was taken from the defendant, by the coroner, under the writ, or not, but you are to look to the writ of replevin and declaration for your description."

4. The court erred in instructing the jury: "They have given their version with reference to it, and it is for you to say, gentlemen, from all the evidence in the case and the circumstances, as to whether he understood what he was doing when he executed this paper."

5. The court erred in instructing the jury: "You have the paper here, and, if he was not deceived, the paper speaks for itself,—or misled. If he understood what he was doing, as claimed here on the part of the defendant, that will dispose of the exemption question; that is, of the exemption that he would have by reason of being engaged in the mercantile business."

It was claimed on the part of the plaintiffs, and Mederic W. Charpentier testified, that, when the officer came to his store with the executions, he was out, delivering goods; that he returned to the store about dark, and found the officer in possession under the executions; that Mr. Hawkins, one of the firm of Hawkins & Perry, was on the sidewalk as plaintiff came up, and told plaintiff if he wanted a few dollars' worth of groceries to sign the receipt, and he might have six or seven dollars' worth; that he took the paper right in, walked back to his desk at the back end of the store, and signed the paper; that he never looked at it at all, and never read it; that he supposed it was a receipt for the groceries, and did not know he was waiving any right of his exemptions. Plaintiff Mederic testified further that he never had any talk with Hawkins, or with the sheriff or under-sheriff, agreeing to waive his exemptions; that, after signing the paper, he was permitted to take, and did take, six or seven dollars' worth of groceries out of the store, and carried them up stairs, where his family lived.

Mr. Hawkins was sworn for the defendant, and gave his version of this transaction as follows:

"I was present at Mr. Charpentier's store when the paper was signed. Mr. McLaughlin and myself were there. Mr. McLaughlin had some talk with Charpentier in my presence in regard to exemptions. I was not on the sidewalk at all. I was inside of the store, near the desk, and I says to Mr. Charpentier, 'Now, you say you want to pay me all the time; you want to secure me.' He said, 'Yes, sir;' and I said, 'Now, I want to know if you won't waive your right of exemption to this stock.' I said, 'You are entitled to an exemption of $250 worth;' and he replied, 'I don't want any exemption. I want to be honest. I want to pay my debts as far as I can.' I said, 'Very well, then. Here is a waiver of exemption. This will waive your exemption of $250.' He said, 'All right.' He said he was a good friend of ours; had had a good

deal of dealing with us; and finally I says, 'All right. You sign it,' After he had signed it I said, 'Now you want some stuff to live on, don't you?' and I said, 'You go at it and take what goods you think you want. Take what you are a mind to.' He took some $30 or $40 worth of groceries. I asked him if he had enough, and he said, 'Yes. I think I have enough.' Then Mr. McLaughlin said, 'I will take the balance.' I remember Mr. McLaughlin said to him he was entitled to his exemption. That was before the waiver was signed."

Mr. McLaughlin was called as a witness, and corroborated the statement of Mr. Hawkins.

Plaintiffs also made a claim upon the trial, and testimony was given tending to show, that the plaintiff's family lived over the store, and consisted of himself, wife, four children, and hired girl; that their provisions were kept in the store; and that they lived on provisions kept there, and had no other. Under this testimony claim was made for exemptions of provisions for family subsistence for six months. We need not discuss this part of the case, however, as no claim is made on the part of defendant but what the question of family provisions was very properly submitted to the jury.

Only two questions, therefore, are raised for our consideration:

1. Was the question fairly submitted to the jury as to the signing of this paper waiving the $250 exemption?

2. Should the jury have been permitted to find in favor of defendant for the value of the goods actually taken on the writ of replevin, and turned over to the plaintiffs, though such goods were not described in the writ of replevin, and the coroner had no right to take them?

Plaintiffs claim that the release of exemptions was procured by fraud. We think this question was very fairly submitted to the jury under plaintiffs' third request to charge, which was given by the court, as follows:

"Upon the question of waiver, the court instructs you that if the plaintiff M. W. Charpentier, at about the time

of the seizure, signed the paper put in evidence by the defendant, understanding at the time what it was, and that it was a surrender of his right to any exemption, and delivered such paper to Mr. Hawkins or Mr. Mc-Laughlin, or intentionally did any other act or thing which gave the creditor or officer to understand that he surrendered this item of $250 exemption, this would amount to a waiver of that item; but if, on the other hand, he signed this paper, believing it to be a receipt, as he says, for the goods he was then to take for his family use, or did not fully understand that it was a waiver of his exemption right, such paper would not amount to a waiver, and you are to determine this question from all the evidence put into the case."

We think this charge of the court upon that part of the case as fair as the defendant was entitled to. It placed the matter of the exemption of the $250 stock in trade fairly before the jury, and they have found the fact upon the theory of the plaintiffs. Counsel for plaintiffs also contends that the direction of the court to the jury that their verdict must be limited to the goods described in the writ and declaration was proper; that the writ of replevin, commanding the officer to take specific goods, gave him no authority whatever to seize upon and turn over to the plaintiffs anything else; and that in doing so, unless he did it at the express direction of plaintiffs, he is solely liable to the party who has suffered by such disregard of his duty as an officer; and that, should it be determined as a question of fact that plaintiffs directed such unlawful conduct on the part of the officer, or legally became liable on account of their acquiescence therein, they must be proceeded against, if at all, in a special action of the case, and cannot be held liable in this form of action, where the liability of the bondsmen would be limited to the property described in the writ and declaration, as well as in the bond itself, where the description of the property follows that of the writ;

and that it would be useless to say that one measure of damages would be proper to fix the liability of the plaintiffs, and another of the bondsmen.

The court was in error in limiting the recovery by the defendant of his lien upon and special interest in the property to the value of the property described in the writ and declaration.  Replevin under our statute is founded on an unlawful detention, whether an unlawful taking has occurred or not, and it has been frequently held by this Court that the description in the writ need not be so specific and exclusive as ' to supersede recourse to extrinsic help, and that in a great majority of cases: the designation in the writ must be supplemented by other means of identification.  In the present case the writ contained a specific description of the property, but the coroner took all the property which the defendant held under his several executions. ˙ He caused it to be appraised, and turned the whole of it over to the plaintiffs, taking a bond, as required by section 8324, How. Stat.    This section provides:

" Before the officer shall deliver such property to the plaintiff, such plaintiff, or some one in his behalf, shall execute a bond to such officer and his assigns, with the addition of his name of office, with sufficient sureties, to be approved by such officer, in a penalty not less than one hundred dollars, and at least double the appraised value of such property, conditioned that the plaintiff will prosecute the suit to effect, and that, if the defendant. recover judgment against him in the action, he will return the same property if return thereof be adjudged, and will pay the defendant all such sums of money as may be recovered by such defendant against him in said action."

The mere seizure of the goods and chattels on the writ does not constitute the replevin.  It is only one step towards it.  It is only when the property shall have been

---

[1] Counsel cited *Dewitt v. Morris,* 13 Wend. 497.

appraised, and the bond given and property turned over
to the plaintiff in the writ, that the act is complete and
the replevin accomplished.   This is the plain intent of
the statute, as by section 8325 it is provided:

" If the plaintiff fail to cause such bond to be executed
and delivered to the officer within twenty-four hours after
the appraisal of such property, the officer shall return the
same to the person from whom he took it."

The condition of the bond is that, if the defendant
recover judgment against him, he will return the same
property if return thereof be adjudged, and will pay the
defendant all such sums of money as may be recovered
against him in the action.   It is evident from the lan-
guage of this section that the same property means the
property which has been appraised, and for which the
bond is given,—the property replevied.   The bond is to
be made in double the appraised value of the property.
Here the whole property taken was appraised, and a bond
given for the whole of the property so appraised, and the
whole property went into the hands of the plaintiffs.
Section 8342, How Stat., provides:

" When either of the parties to an action of replevin,
at the time of the commencement of the suit, shall
have only a lien upon, or special property or part owner-
ship in, the goods and chattels described in the writ,
and is not the general owner thereof, that fact may be
proved on the trial, or on the assessment of value, or on
the assessment of damages, in all cases arising under this
chapter; and the finding of the jury or court, as the
case may be, shall be according to such fact, and the
court shall thereupon render such judgment as shall be
just between the parties."

The verdict in the present case is that the plaintiffs
were the general owners of the property, but that
defendant did not unlawfully detain the same, and that
he had a lien upon and special property in said goods
and chattels.   It is not denied but that this lien upon

and special interest in the property extended to all the goods replevied,—not only those described in the writ, but all that were taken under the writ, inventoried, appraised, and turned over to the plaintiffs; and a judgment that should be just between the parties is one that shall give the defendant a lien upon all the goods actually replevied, where it is found that the general ownership is in the plaintiff to the action, he being the execution debtor. It is conceded that the defendant might have a special action on the case against the plaintiffs for the value of these goods, inasmuch as the proofs established the facts of their having been appraised and turned over to them upon their executing the bond. There is no good reason why these damages may not as well be assessed in this action. It is one between the party claiming the special property in and lien upon the goods and the general owners. The same parties are before the court as if the action was a special one on the case for the value of those goods not described in the writ. *Humphrey v. Bayn*, 45 Mich. 567 (8 N. W. Rep. 556).[1] The effect such a judgment might have upon the bondsmen is not before us, and we need not discuss it.

The court was in error for these reasons, and the judgment must be reversed, with costs, and new trial ordered.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. MORSE, J., did not sit.

[1] Cited by counsel for defendant.